UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
CIVIL MINUTE

---

**Case Title :** William/Denise Nissen          **Case No :** 11-30546-E-13
                                                **Date :** 10/29/15
                                                **Time :** 1:30 p.m.

**Matter :** [128] - Order to Appear

**Judge :** Ronald H. Sargis
**Courtroom Deputy :** Janet Larson
**Reporter :** Diamond Reporters
**Department :** E

---

**APPEARANCES for:**
**Movant(s) :**

**Respondent(s) :**
  Attorney for the Creditor - Robert Norman
  Attorney for the Debtors - Lorraine W. Crozier
  Attorney for the Trustee - Neil Enmark
  Creditors - Jenna Evans, Gina Feezer, Robert Kaltenbach (by phone)

---

## CIVIL MINUTE

Local Rule 9014-1(f)(3) Motion.

Correct Notice Provided. The Proof of Service states that the Motion and supporting pleadings were served on Debtor, Debtor's Attorney, Chapter 13 Trustee, Gina Feezer, Ocwen Loan Servicing LLC, Ocwen Financial Corporation, CFBP, Office of the California Attorney General, Office of the U.S. Attorney, C. Scott Green, and Office of the United States Trustee on September 30, 2015. By the court's calculation, 29 days' notice was provided.

    The Order to Appear was properly set for hearing on the notice required by Local Bankruptcy Rule 9014-1(f)(3). The Debtor, Creditors, the Trustee, the U.S. Trustee, and any other parties in interest were not required to file a written response or opposition to the motion.

**The Order to Appear is and Show Cause is Discharged.**

On September 28, 2015, the court issued an Order to Appear. Dckt. 128. In relevant part, the court ordered:

> Therefore, upon review of the two motions to approve a loan modification between the Debtors and Ocwen Loan Servicing, LLC; no testimony or evidence provided by a managing member or employee of Ocwen Loan Servicing, LLC; Ocwen Financial Corporation having one of its employees provide testimony as to the business operations of an indirect subsidiary; that employee not testifying to any personal knowledge as to the books and records of Ocwen Loan Servicing, LLC (other than repeating what she read in some documents provided to her by an unidentified person or persons); the relative simplicity for an entity to provide *bona fide*, good faith testimony to authenticate records and document an interest in a promissory note;
>
> The hearing on the Motion for Order Approving a Loan Modification filed by the Debtor having come on for hearing on September 22, 2015; counsel or representative for Ocwen Loan Servicing, LLC or Ocwen Financial Corporation not being present; and good cause appearing; and good cause appearing,
>
> **IT IS ORDERED** that (1) a senior management of Ocwen Financial Corporation;(2) a managing member of Ocwen Loan Servicing, LLC; and (3) Gina Feezer, and their respective attorneys of choice, shall appear at the hearing on October 29, 2015, at 1:30 p.m., in person, in Department E of the United States Bankruptcy Court, 501 I Street, Sixth Floor, Sacramento, California, with no telephonic appearances allowed on this matter.
>
> **IT IS FURTHER ORDERED** that on or before October 15, 2015 each of the persons ordered to appear shall file and serve on all parties served the instant Order to Appear any and all credible, properly authenticated evidence as to:
>
>> (1) the existence of Ocwen Loan Servicing, LLC;
>>
>> (2) why Ocwen Loan Servicing, LLC has no managing member or employee which could provide the declaration;
>>
>> (3) all of Ms. Feezer's conduct, actions, and activities by which she has personal knowledge to provide the testimony concerning the books and records of Ocwen Loan Servicing, LLC, and business dealings; and
>>
>> (4) identifying all of the declarations or other testimony Ms. Feezer has provided in other state or federal court proceeding relating to the books, records, notes, business operations of, or loans purported to be owned or serviced by, Ocwen Loan Servicing, LLC since January 1, 2014.

**IT IS FURTHER ORDERED** that all of the above responsive pleadings and evidence ordered to be produced shall be filed and served on or before October 15, 2015.

**BACKGROUND**

On September 22, 2015, the court held a hearing on William Nissen and Denise Nissen's ("Debtor") Motion for Order Approving a Loan Modification. Dckt. 118. The Debtor named Ocwen Loan Servicing, LLC as the creditor offering the loan modification.

This was not the Debtor's first attempt at getting court approval for a loan modification. On May 30, 2014, the Debtor filed their first Motion for Order Approving a Loan Modification, naming Ocwen Loan Servicing, LLC as the creditor. Dckt. 46. At the hearing on July 1, 2014, the court denied without prejudice the Motion on the grounds that the court could not determine by the evidence presented if Ocwen Loan Servicing, LLC is the creditor in fact who has the authority to enter into loan modifications with the Debtor or merely the loan servicer. Specifically, the court stated:

> The Loan Modification Agreement identifies Ocwen Loan Servicing, LLC as the entity offering the loan modification and does not indicate that it is the actual creditor to enter into a contract to modify the Loan.  The Loan Modification Agreement does not state that it is a contract or agreement between Ocwen Loan Servicing, LLC and the Debtors, but only uses the non-specific language, "Ocwen Loan Servicing, LLC ('Ocwen') is offering you this Loan Modification Agreement...."
>
> Interestingly, Ocwen Loan Servicing, LLC is not a party to sign this Loan Modification Agreement.  The signature block for the other party to the Loan Modification Agreement provides that it is signed by "Mortgage Electronic Registration Systems, Inc. ["MERS"] – Nominee for Service." This is problematic for several reasons. . . .
>
> In this case, Proof of Claim No. 10 was filed for OneWest Bank, FSB.  The claim is for $252,871.45 and is asserted to be secured by the Debtors' property at 8609 El Sobrante Way, Orangevale, California.  The person filing the proof of claim for OneWest Bank, FSB, is identified as "Ryan M. Davies, Claimant's Counsel."  [Payments] on the claim are to be sent to "OneWest Bank, FSB 00 Cashiering Dept., 6900 Beatrice Drive, Kalamazoo, MI."
>
> The Loan Modification Agreement does not specifically identify the Note that is being modified, but does state that the principal balance is $246,092.03.  It appears that this the same debt as the one upon which Proof of Claim No. 10 is based. . . .
>
> On October 15, 2013, a Transfer of Claim was filed

> for Proof of Claim No. 10. Dckt. 37. The Transferee is identified as Ocwen Loan Servicing, LLC and the Transferor is identified as OneWest Bank, FSB. The person signing the Transfer document is "Nancy Lee, Esq.," who is identified as the Transferee's Agent. This document directs that payments on the claim are to be sent to Attn: Payment Processing, 3451 Hammond Avenue, Waterloo, IA 50702. No documents, such as an assignment of the Note, assignment of the claim, copy of note endorsed in blank and certification that it is in the possession of the Transferee is attached to the this document.
>
> As this court has stated on many occasions, the fundamental requirement for any federal court to exercise federal court judicial power is that there must be a case or controversy between the parties for whom relief is sought. U.S. Constitution Article III, Sec. 2. Here, there is nothing to indicate that there are two real parties in interest whose rights are being impacted. While the Debtors are before the court, it appears that at best a servicing company, for an unidentified creditor in this case, is being inserted into the Loan Modification Agreement as a "placeholder," who may or may not be authorized to modify the creditor's rights and claim.
>
> This court will not issue "maybe effective, maybe not effective" orders. The residential mortgage market has already suffered serious black eyes from incorrectly identified lenders, transferees, nominees, robo-signing of declarations and providing false testimony under penalty of perjury, and documents which do not truthfully and accurately identify the parties to the transaction. It is not too much for least sophisticated consumer debtors to have the true party with whom they are purportedly contracting identified in the written contract. It is not too much, and is Constitutionally mandated, that the true parties appear in federal court to have their rights and interests determined, and the relief they seek issued.
>
> If Ocwen Loan Servicing, LLC is the loan servicer for the actual creditor and is the authorized agent for the creditor, then it can properly exercise that power. In doing so, it can properly disclose the identity of the true creditor, disclose that it is exercising its agent authority, and execute the documents (rather than MERS) as the agent for the true creditor.

Dckt. 62.

Over a year later, on August 20, 2015, the Debtor filed another Motion for Order Approving a Loan Modification, once again naming Ocwen Loan Servicing, LLC as the creditor. Dckt. 118. However, the Debtor provided the declaration of Gina Feezer "a senior loan analyst employed by Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicing, LLC." Dckt. 118.

At the September 22, 2015 hearing, the court expressed its concerns over the representations made by Ms. Feezer in her declaration. Specifically, the court stated:

> The exhibits and declaration of Ms. Feezer just further highlights the confusion in the Fannie Mae Servicing Guide. Ms. Feezer's declaration appears to suggest that Ocwen is both the servicer of a loan held by Fannie Mae and also the holder of the underlying note which was transferred to it by One West Bank, FSB. However, none of the exhibits provided by the Debtor show any such transfer or a copy of the current Deed of Trust and Note denoting who is the actual lender. The Feezer declaration offers conflicting testimony that pursuant to the Servicing Guide it is the "holder" of the Note, but that the note has also been directly transferred from One West to Ocwen Loan Servicing, LLC.
>
> The Declaration provided by Gina Feezer raises significant doubts as to whether an entity identified as Ocwen Loan Servicing, LLC actually exists.  Ms. Feezer states that she is a "senior loan analysis" who is "employed by Ocwen Financial Corporation," which has an "indirect subsidiary [named] Ocwen Loan Servicing, LLC."  Ms. Feezer provides no testimony as to what is this "indirect subsidiary" relationship.
>
> More significantly, while Ms. Feezer provides her legal conclusion that she is "authorized" to provide testimony as to the books and records of the "indirect subsidiary" of the company which employs her, she does not testify to any actual factual basis for the court reaching the same conclusion.  She also fails to provide any testimony why Ocwen Loan Servicing, LLC has no managing members or employees who can provide accurate, credible, competent testimony concerning the operation of Ocwen Loan Servicing, LLC.  Ms. Feezer's lack of testimony is pregnant with admissions that Ocwen Loan Servicing, LLC may well not exist as a bona fide, viable, entity which is a proper party in a federal court.
>
> Further, Ms. Feezer testifies that at best, she has no personal knowledge of any facts concerning Ocwen Loan Servicing, LLC, but is merely stating what she has read from some records which she believes (for an unstated reason) are those of Ocwen Loan Servicing, LLC.  She does not provide any information about how such records are maintained, under whose control and supervision the records are made and maintained, or why she has access to any such records.  She again merely provides a legal conclusion that as an employee of Ocwen Financial Corporation, the records of an indirect subsidiary (for which she is not an managing member, employee, or representative) are maintained in the ordinary course of business.  FN.1

> ------------------------------
> FN.1. Ms. Feezer's testimony would be akin to an employee of Bank of America Corporation testifying about the records of BAC Loans Servicing, LP concerning the loans originated and maintained by Countrywide Loan Servicing, LP. A shareholder of an entity, which has an interest in an entity that has an interest in another, indirect subsidiary entity that has records, is not made a competent, credible witness concerning the business, operations, and records of the indirect subsidiary merely because the person is employed by a shareholder of an entity that has an interest in an entity that has an interest in the indirect subsidiary.
> ------------------------------

Dckt. 125

　　　In light of this being the Debtor's second attempt at court approval for loan modification, the court granted the authorization to enter the modification, but emphasized that the court is doing so "based in large part of the personal testimony of Gina Feezer. The court, Debtor, and bankruptcy estate have justifiably relied upon the statements of fact provided by Ms. Feezer, individually and in her capacity as an employee of Ocwen Financial Corporation and in providing the testimony purportedly for Ocwen Loan Servicing." Dckt. 125.

　　　While the instant issue concerning the modification has been resolved, there remains the fundamental and overarching concern over the representations made by Ocwen Loan Servicing, LLC and Ocwen Financial Corporation to these consumers over their role in the loans they, collectively and individually, purport to both service and hold.

　　　Repeatedly, in a number of cases, the court has expressed its concern over the representations of Ocwen Loan Servicing, LLC, and Ocwen Financial Corporation, which asserts that an indirect subsidiary relationship to Ocwen Loan Servicing, LLC. In light of the representations made by Ms. Feezer as to the role of Ocwen Loan Servicing, LLC and Ocwen Financial Corporation, it is apparent that the court needs to order the appearance of these entities.

**OCWEN FINANCIAL CORPORATION AND OCWEN LOAN SERVICING, LLC RESPONSE**

　　　Ocwen Financial Corporation and Ocwen Loan Servicing, LLC filed a response to this court's Order to Appear on October 15, 2015. Dckt. 134. Both entities (collectively referred to as "Respondents") are represented by Robert Norman, Jr., an attorney at Houser & Alison, APC.

　　　Respondents address this court's September 28, 2015 Order to Appear by first explaining the relationship of Ocwen Loan Servicing, LLC and Ocwen Financial Corporation, then by describing Gina Feezer's authority to act on behalf of Ocwen Loan Servicing, LLC.

**Relationship of Ocwen Financial Corporation and Ocwen Loan Servicing, LLC**

Respondents assert that Ocwen Financial Corporation is a Florida corporation organized in February 1988, and headquarters in West Palm Beach, Florida. It is publicly traded on the New York Stock Exchange under the stock ticker symbol OCN, and is registered with the SEC. Ocwen Financial Corporation is a financial services holding company which is engaged in the servicing and origination of mortgage loans. It conducts these services through its subsidiaries. A Certificate of Good Standing for Ocwen Financial Corporation is offered as Exhibit 3.

Ocwen Loan Servicing, LLC is organized and existing Delaware limited liability company. A Certificate of Good Standing for Ocwen Loan Servicing, LLC is attached as Exhibit 4. FN.1.

-------------------------------------------------------------------
FN.1. Respondents fail to assert the evidentiary basis for admitting Exhibits 3 and 4. Respondents neither assert grounds for authentication nor for a hearsay exception in their memorandum or in Feezer's Declaration. Respondents suggest that the documents were obtained from an unnamed, ambiguously identified "Company's Office of the Corporate Secretary." Dckt. 135 ¶ 4. According to the Feezer Declaration, "Company" refers to Ocwen Financial Corporation, Ocwen Loan Servicing, LLC, and Ocwen Loan Servicing, LLC's managing member, Ocwen Mortgage Servicing, Inc. Id.; Dckt. 135 ¶ 4.  It appears that the witness, and the entities, make little effort to make any legal or functional distinction between Ocwen Financial Corporation and Ocwen Loan Servicing, LLC.
-------------------------------------------------------------------

Ocwen Financial Corporation owns the common stock of its primary operating subsidiary, Ocwen Mortgage Servicing, Inc. and "directly or indirectly owns all of the outstanding stock of its other primary operating subsidiaries, including [Ocwen Loan Servicing, LLC]." Dckt. 134 p. 4. There is no single "individual} that is the managing member of Ocwen Loan Servicing, LLC. Since 2012, Ocwen Loan Servicing, LLC has been a wholly owned subsidiary of Ocwen Mortgage Servicing, Inc.

In the declaration of Ms. Feezer, based on her meeting with the "corporate secretary" of Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing, LLC, testifies that Ocwen Mortgage Servicing, Inc. is now the single member of Ocwen Loan Servicing, LLC.

In the Response, in lieu of having a managing member of Ocwen Loan Servicing, LLC, a "Board of Managers" [whose identity is not disclosed] manages Ocwen Loan Servicing, LLC.  Further, the employees of Ocwen Financial Corporation primarily handle the day to day affairs of Ocwen Loan Servicing.  Response, p. 2:15-21.

Ocwen Financial Corporation, through its "subsidiaries," including Ocwen Loan Servicing, LLC, performs primary and master servicer activities for investors and other loan servicers, including:

Federal National mortgage Association (Fannie Mae); Federal Home Loan Mortgage Corporation (Freddie Mac); the Government National mortgage Association (Ginnie Mae); and private-label securitizations.

<u>Gina Feezer's Authority to Act on Behalf of Ocwen Loan Servicing, LLC</u>

Respondents summarize Gina Feezer's employment through 10 years of employment. Ms. Feezer was employed by Ocwen Federal Bank FSB in October 2004. Dckt. 135 ¶ 5. Ocwen Financial Bank, FSB performed "similar functions as [Ocwen Loan Servicing, LLC]." *Id.* Ocwen Loan Servicing, LLC then became the successor in interest to Ocwen Financial Bank, FSB in June 2005. Ms. Feezer's employment status transitioned to Ocwen Loan Servicing, LLC. Ms. Feezer remained employed with Ocwen Loan Servicing, LLC until October 4, 2012, when her employment "transitioned to [Ocwen Financial Corporation]," the ultimate parent company of Ocwen Loan Servicing, LLC. *Id.* Respondents claim Ms. Feezer was "authorized to act for [Ocwen Loan Servicing, LLC] at all times relevant through [Ocwen Loan Servicing, LLC]'s Written Consent and Company Resolution." *Id.*, ¶ 10.

Ms. Feezer claims to have worked as a bankruptcy manager position from October 2004 to May 2006. In May 2006, Ms. Feezer transitioned to her current role as a Senior Loan Analyst at Ocwen Loan Servicing, LLC. *Id.*, ¶ 6, 7. In her position as a Senior Loan Analyst, Ms. Feezer conducts "careful research of litigated and other disputed matters being handled by the Company." FN.2. This includes loan setup, investor relations, customer service, default servicing, bankruptcy, and outside counsel to review the "Company's business and loan records, practices, and general handling of various loans and properties." Occasionally, Ms. Feezer reviewed and verified litigation documents, such as discovery responses, declarations, affidavits, and also testified "for the Company at depositions and in court."

------------------------------------------------------------------
FN.2. Feezer's Declaration and Respondents' Motion refer to Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing, LLC collectively as "the Company." This court only quotes that term to emphasize the vagueness in the documents filed and the lack of separateness of these entities as stated by these entities and the employees.
------------------------------------------------------------------

In the underlying bankruptcy case, Ms. Feezer reviewed "the records that pertain to the Debtors...and that she gained knowledge of them from the business records of [Ocwen Loan Servicing, LLC] through its computerized systems which has the Debtors' loan servicing history, transaction history, internal comment log between the departments and electronic imaging of the loan files." *Id.*, ¶ 9.

**GINA FEEZER'S DECLARATION**

Accompanying Respondent's response is Ms. Feezer's declaration. Dckt. 135.

When discussing the corporate structure of the entities, Ms. Feezer provides the following explanation, without any supportive documentation:

> I have also conferred with the Company's Office of the Corporate Secretary ("Corporate Secretary") to confirm my understanding of the corporate formation and the distinction among Ocwen Financial Corporation ("OFC"), the parent company, and its subsidiaries, including [Ocwen Loan Servicing, LLC], and its managing member, Ocwen Mortgage Servicing, Inc. ("OMS") (collectively the "Company").

Dckt. 135, ¶ 4.

Ms. Feezer states that in October 2004, she was employed by Ocwen Financial Bank, FSB, which Ms. Feezer testifies performed similar functions as Ocwen Loan Servicing, LLC. Ms. Feezer states that Ocwen Loan Servicing, LLC then became the successor in interest to Ocwen Financial Bank, FSB in June 2005, which resulted in Ms. Feezer's employment being transitioned to Ocwen Loan Servicing, LLC. Ms. Feezer remained employed with Ocwen Loan Servicing, LLC until October 4, 2012 at which time her employment transitioned to Ocwen Financial Corporation where Ms. Feezer is currently employed.

Ms. Feezer states that in her ten years employed by Ocwen Financial Bank, FSB, Ocwen Loan Servicing, LLC, and currently Ocwen Financial Corporation, she is "familiar with the business records maintained by [Ocwen Loan Servicing, LLC] for the purpose of handling mortgage loans." Dckt. 135, ¶ 6.

While Ms. Feezer stated that she was currently employed by Ocwen Financial Corporation, Ms. Feezer later states that in May 2006, she transitioned to her current role as a Senior Loan Analyst at Ocwen Loan Servicing, LLC. Compare Dckt. 135, ¶ 5 with ¶ 7. In this position, Ms. Feezer testifies that her job duties include:

> ...conducting careful research of litigated and other disputed matters being handled by the Company. This includes [her] continued working with the Company's various departments, including loan setup, investor relations, customer service, default servicing, bankruptcy, and outside counsel to review the Company's business and loan records, practices, and general handling of various loans and properties. From time to time, [Ms. Feezer] review and verify discovery responses, prepare declarations and affidavits, and testify for the Company at depositions and in the court.

Dckt. 135, ¶ 7.

Ms. Feezer than continues in the declaration to then state she is "employed by [Ocwen Financial Corporation], the ultimate parent company of [Ocwen Loan Servicing, LLC]" and is "authorized to act for [Ocwen Loan Servicing, LLC]." To support this, Ms. Feezer identifies Exhibit 1 which is a Unanimous Written Consent of the Managers of

Ocwen Loan Servicing, LLC which Ms. Feezer testifies is dated November 10, 2014. Exhibit 1 was filed under seal.

Reviewing Exhibit 1, the court first notes that the Unanimous Written Consent of the Managers of Ocwen Loan Servicing, LLC is dated October 7, 2015, and not November 10, 2014 as stated by Ms. Feezer under penalty of perjury. Without disclosing the substance, Exhibit 1 is highly redacted and does not specify that Ms. Feezer, in fact, had any authority to act on behalf of Ocwen Loan Servicing, LLC or access to the business records of Ocwen Loan Servicing, LLC. To the extent that her name is actually in the document, it has been redacted, for which reason the court cannot fathom. FN.3.
----------------------
FN.3. The redacting of such non-confidential, critical information only works to diminish the credibility of Ocwen Financial Corporation, Ocwen Loan Servicing, LLC (to the extent it exists) and the witnesses and counsel who are presenting the arguments and evidence to the court.
---------------------

The Consent does not identify any specific person to have the authority to act on behalf of Ocwen Loan Servicing, LLC or which entity such person works for. Instead, the Consent merely states "Senior Loan Analyst."

Ms. Feezer also states that the Ocwen Loan Servicing, LLC Certificate of Secretary, filed under seal as Exhibit 2, also provides for the authority of Ms. Feezer to act on behalf of Ocwen Loan Servicing, LLC. Exhibit 2 is also heavily redacted. This document appears to authorize the non-Ocwen Loan Servicing, LLC to perform almost every function of Ocwen Loan Servicing, LLC. Ms. Feezer identifies her name as being include on the list the non-Ocwen Loan Servicing, LLC employees authorized to exercise the rights and powers of Ocwen Loan Servicing, LLC.

Ms. Feezer continues and testifies that based on her meeting with the Corporate Secretary, Ms. Feezer understands that "[Ocwen Financial Corporation] owns the common stock of its primary operating subsidiary, [Ocwen Mortgage Servicing, Inc.] and directly or indirectly owns the outstanding stock of its other primary operating subsidiaries, including [Ocwen Loan Servicing, LLC.]" Dckt. 135, ¶ 12.

Based on the meeting with the Corporate Secretary and her understanding of the "Company," Ms. Feezer testifies that:

> [T]here is no single individual that is the managing member of [Ocwen Loan Servicing, LLC]. [Ocwen Financial Corporation] was the sole member of [Ocwen Loan Servicing, LLC]. Since 2012, [Ocwen Loan Servicing, LLC] has been a whole owned subsidiary of ([Ocwen Mortgage Servicing, Inc.]). [Ocwen Mortgage Servicing, Inc.] is now a wholly owned subsidiary of [Ocwen Financial Corporation]. [Ocwen Mortgage Servicing, Inc.] is now the sole member of [Ocwen Loan Servicing, LLC].

Dckt. 135, ¶ 13.

Ms. Feezer concludes by stating that filed as Exhibit 5 under seal is a list of all the declaration and other testimonies that she can recall which Ms. Feezer has provided in state or federal court proceedings relating the books, records, notes, and business operations of Ocwen Loan Servicing, LLC.

**APPLICABLE LAW**

The court has been concerned with loan servicing companies which misrepresent themselves as creditors, as it has been with debtors who incorrectly identify (and seek relief against) loan servicing companies which are not the creditor. Hearing the explanations offered as to who Ocwen Loan Servicing, LLC is, the court feels compelled to review basic law relating to the doctrine of alter ego. When discussing interrelated corporate structures, the doctrine of alter ego or piercing the corporate veil "refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation." *Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal.App.3d 405, 411, 93 Cal.Rptr. 338 (1971). The purpose of the doctrine is "to bypass the corporate entity for the sole purpose of avoiding injustice." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 301 (1985).

Courts in this district has provided the following test to determine if one corporation is the alter ego of another:

> To establish that one entity is the alter ego of another, a plaintiff must show "(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." Id.; In re Intelligent Direct Marketing, 818 B.R. 579, 588 (E.D. Cal. 2014). Sister entities may be determined to be alter egos if the entities are so organized or controlled as to make one entity "merely an instrumentality, agency, conduit or adjunct of another." McLoughlin v. L. Bloom Sons Co., Inc., 206 Cal.App.2d 848, 851–52, 24 Cal.Rptr. 311 (1962).

*In re SK Foods, LP*, 499 B.R. 809, 840-41 (Bankr. E.D. Cal. 2013).

To determine whether there is a sufficient unity of interest and ownership to support alter ego liability, courts consider a long list of factors:

> [1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses;
>
> [2] the treatment by an individual of the assets of the corporation as his own;

[3] the failure to obtain authority to issue stock or to subscribe to or issue the same;

[4] the holding out by an individual that he is personally liable for the debts of the corporation;

[5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities;

[6] the identical equitable ownership in the two entities;

[7] the identification of the equitable owners thereof with the domination and control of the two entities;

[8] identification of the directors and officers of the two entities in the responsible supervision and management;

[9] sole ownership of all of the stock in a corporation by one individual or the members of a family;

[10] the use of the same office or business location;

[11] the employment of the same employees and/or attorney;

[12] the failure to adequately capitalize a corporation;

[13] the total absence of corporate assets, and undercapitalization;

[14] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;

[15] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities;

[16] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities;

[17] the use of the corporate entity to procure labor, services or merchandise for another person or entity;

[18] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another;

[19] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions;

[20] and the formation and use of a corporation to transfer
to it the existing liability of another person or entity.

*Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 597-98 (N.D. Cal. 2012); *Roman Catholic Archbishop*, 15 Cal.App.3d at 411, 93 Cal.Rptr. 338 (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 837, 26 Cal.Rptr. 806 (1962)); *Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811-12 (Cal.Ct.App.2010). This list is not exhaustive, and no one factor is determinative. *Zoran Corp.*, 185 Cal.App.4th at 811-12.

The second requirement of the alter ego test requires that "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud" or "work an injustice to a third person." *Bank of Montreal*, 476 B.R. at 600 (citing *Associated Vendors Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 837, 26 Cal.Rptr. 806 (Cal.Ct.App.1962))(quotation omitted).

**DISCUSSION**

After reviewing the response, Ms. Feezer's declaration, and the accompanying exhibits, the court is concerned that the evidence provided shows that Ocwen Loan Servicing, LLC is an "entity" in name only. Rather, it may well be that Ocwen Financial Corporation, using the names Ocwen Mortgage Servicing, Inc. and Ocwen Loan Servicing, LLC is really just one big entity, hiding behind the name Ocwen Loan Servicing, LLC. Hiding behind the name may be part of a coordinated efforts with its attorneys to erect a facade to hide it from the court and insulate it from financial liability for its conduct from consumers and the courts. This may explain why "Ocwen Loan Servicing, LLC" failed to respond to several discovery subpoenas in other unrelated cases or respond to motions to compel and for sanctions.

Within its own supporting documents, Ocwen Loan Servicing, LLC and Ocwen Financial Corporation confuse themselves. For instance, Ms. Feezer, in her five-page declaration, switches from being an employee of one entity to the other. The following are direct quotes from Ms. Feezer's declaration as to where she is currently employed:

1. "As a result, in June 2005, my employment transitioned to [Ocwen Loan Servicing, LLC]. I remained employed with [Ocwen Loan Servicing, LLC] until October 4, 2012. At that time, my employment transitioned to [Ocwen Financial Corporation] to the present time."

    a. Dckt. 135, ¶ 5.

2. "During my more than 10 years employment with [Ocwen Federal Bank FSB], [Ocwen Loan Servicing, LLC], and now [Ocwen Financial Corporation], I have closely interacted with the Company's numerous departments on a daily basis, including the bankruptcy department."

    a. Dckt. 135, ¶ 6

    3.    "In May 2006, I transitioned to my current role as a Senior Loan Analyst at [Ocwen Loan Servicing, LLC]. As a Senior Loan Analyst, I perform a number of roles within [Ocwen Loan Servicing, LLC]'s Law Department."

        a.    Dckt. 135, ¶ 7.

    4.    "Even though I am employed by [Ocwen Financial Corporation], the ultimate parent company of [Ocwen Loan Servicing, LLC], I am authorized to act for [Ocwen Loan Servicing, LLC]."

        a.    Dckt. 135, ¶ 10.

The conflating of the entities is just further highlighted in the exhibits filed by the parties. The Unanimous Written Consent of the Managers of Ocwen Loan Servicing, LLC, dated October 7, 2015 (not November 10, 2014 as purported by Ms. Feezer) indicates that "Senior Loan Analyst" at an unspecified entity may act on behalf of Ocwen Loan Servicing, LLC (defined in the Consent as the "Company"). The Consent does not state where this "Senior Loan Analyst" works, which may be specified in the redacted portion of the consent.

The Ocwen Loan Servicing, LLC Certificate of Secretary does not provide any clarification either. In fact, the Certificate explicitly identifies Ms. Feezer as an employee of Ocwen Loan Servicing, LLC. While this Certificate is dated December 21, 2011, which is during a time Ms. Feezer declares she was an employee of Ocwen Loan Servicing, LLC, it does not state that Ms. Feezer, now an employee of Ocwen Financial Corporation, (presumably, at least), has the authority to act on behalf of Ocwen Loan Servicing, LLC.

Looking at the way in which the "entities" filed their combined Response appears to convolute the discussion by using acronyms and defined terms which do not clearly distinguish between actual separate legal entities. This is evident by the first line of the parties' response which states:

> Houser & Allison, APC, on behalf of Ocwen Loan Servicing, LLC ("OLS"), and Ocwen Financial Corporation ("OFC") (OLS and OFC are collectively referred to as "Ocwen" herein).

Dckt. 134. Such a collective defined term as "Ocwen" to include both Ocwen Loan Servicing, LLC and Ocwen Financial Corporation appears to be an affirmative statement that the two entities are functionally nothing more but a single entity or enterprise. The court finds it surprising that counsel would not clearly distinguish between two separate legal entities, if they were two separate legal entities.

Looking further at the response, the responding entities appear to further "muck the waters" by using nearly identical acronyms (i.e. OFC, OLS, OMS) to what the court interprets as an attempt to give the appearance of corporate separation without there in fact being one.

Ms. Feezer's declaration does the same by providing a single defined term for all of the allegedly separate entities. Ms Feezer states:

> I have also conferred with the Company's Office of the Corporate Secretary ("Corporate Secretary") to confirm my understanding of the corporate formation and the distinction among Ocwen Financial Corporation ("OFC"), the parent company, and its subsidiaries, including [Ocwen Loan Servicing, LLC], and its managing member, Ocwen Mortgage Servicing, Inc. ("OMS")(collectively the "Company").

Dckt. 135, ¶ 4. Based on the declaration, and the defined term "Company" to include all three entities, Ms. Feezer declares under the penalty of perjury that all three of the Ocwen entities share a single Corporate Secretary.

In total, the purported distinction between Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and Ocwen Financial Corporation appears to be nothing more than a canard created by the single Ocwen "Company" in an attempt to avoid liability. Ms. Feezer could not even correctly state which entity employs her, which just further emphasizes that these entities are all one in the same.

**OCTOBER 27, 2015 HEARING**

At the hearing, the court accepted further testimony from Ms. Feezer and was provided unredacted copies of the redacted documents filed with the court. With respect to the redacted documents, as stated on the record that it continues to have concerns that the redactions done to the documents by Ocwen Loan Servicing, LLC and Ocwen Financial Corporation were excessive and not done for legitimate, legally sufficient purposes. The redactions deleted information about the scope of the authorizations for employees of other entities to act for Ocwen Loan Servicing, LLC. Additionally, the specific paragraph, including the heading, which related to bankruptcy court proceedings had been redacted.

The response provided by Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (to the extent that it actually exists as a real, separate entity) is that it/they were relying on the general language of the authorization rather than the specific language relating to proceedings in bankruptcy court. The court did not find this contention that the general language of the documents controlled over the specific language.

Ms. Feezer's testimony was a mixed bag. While stating that she has many years of experience, beginning with the former Ocwen Bank, FSB, then to Ocwen Loan Servicing, LLC when the Bank's assets were transferred to it, and ultimately to her current employment with Ocwen Loan Servicing, LLC, her testimony could not clearly distinguish between there being three currently separate entities engaging in business. Ms. Feezer testified that she currently is employed in the "legal department," but could not testify if it was the legal department for Ocwen Loan Servicing, LLC; Ocwen Mortgage Servicing,

Inc.; or Ocwen Financial Corporation. She further stated that even though her employment has moved through to Ocwen Financial Corporation, nothing has really changed in how she does business.

Ms. Feezer's testimony is that she spends substantial time in working with the in-house legal department and outside counsel. Little if any testimony was provided as to Ms. Feezer being involved in the loan servicing purported to being done by Ocwen Loan Servicing, LLC. Redacted Exhibit 5, the unredacted version of which is filed with the court, is a list of the legal proceedings in which Ms. Feezer provide testimony, declarations, or affidavits (collectively "Testimony"). (The court questioned, and was not satisfied with, the explanation from counsel why such public information needed to be filed under seal.) For 2014, Ms. Feezer provided such Testimony in 101 separate bankruptcy and non-bankruptcy cases. In the first ten month of 2015, Ms. Feezer provided such Testimony in 70 cases. Based on Ms. Feezer's testimony, it appears that her employments consists of being a witness to provide such Testimony, and not to be involved in the business operations of Ocwen Loan Servicing, LLC.

The court also noted that both Ms. Feezer's declaration and the Response filed by counsel for the Ocwen entities uses curious language concerning the entities. First, the Response and declaration create a group definition that has the purported three separate entities referred to as "Ocwen" for these business activities. The Response also affirmative states, "[Ocwen Financial Corporation] is a financial services holding company which, through it s subsidiaries, originates and services loans." While this could be read to actually states, "Ocwen Financial Corporation is a financial services company that owns separate entities which originate and service loans," the court is not so presumptuous to rewrite what counsel has written for Ocwen Financial Corporation.

The court also noted the consent judgment agreed to by Ocwen Financial Corporation in *Consumer Financial Protection Bureau et al. v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC.*, D.C. Dist. Case No. 13-2025, Dckt. 12. In that consent judgment, Ocwen Loan Servicing, LLC and Ocwen Financial Corporation agreed jointly to the $127.3 million to be paid into account for payments to borrowers. Further, that both Ocwen Loan Servicing, LLC and Ocwen Financial Corporation agreed to provide complete and accurate data concerning borrowers. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC agreed and so jointly defined themselves to be "Ocwen" for purposes of the consent judgement.

As discussed at the hearing, sophisticated, publically traded holding companies are very careful to distinguish between the holding company and operating subsidiaries. The court pointed to several examples in which such entities would not state that the holding company engages in actual banking business and then in the specific servicing or other business practices of the separate subsidiaries of the banking entity. The court was not presented with what the court found to be a credible information for the conflating of the "Ocwen Entities" if there were actually three separate entities.

It appears that the continuing confusion as to who and what "Ocwen" is based evidence and arguments presented may well arise from sloppy business practices rather than a malevolent scheme to mislead the court and consumers. As seem with the misuse of MERS, robo-signing, and the failure to identify real party in interest creditor (rather than a placeholder loan servicing company), business practices to cut expenses (as demanded by creditors) may drive short-cutting the law. Outside counsel, in-house counsel from the "legal department," the manager of the bankruptcy group at "Ocwen Loan Servicing, LLC," and Robert Kaltenbach, identified as the management representative of "Ocwen Loan Servicing, LLC," having participated in hearings and directly being communicated the concerns of the court and clear shortcoming of the entity identified as "Ocwen Loan Servicing, LLC," (including failing to respond to 2004 subpoenas, failing to respond to motions to compel, failure to respond to objections to notice of mortgage payment change, and lumping together the business activities of Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., and Ocwen Loan Servicing, LLC), there is little reason or excuse for such failures, imprecise identification of parties, and improperly presenting evidence to the court by the "Ocwen Entities" and their counsel.

Counsel for the "Ocwen Entities" has several times now assured the court that his client(s) understand the concern and requirements of federal law and judicial rules. The court anticipates seeing such corrected conduct given these parties and their counsel being clearly aware of the significant consequences (corrective or punitive) if the improper conduct continues.

The court discharges the Order to Appear and Show Cause. The court also recognizes that in appearing to address these issues, the persons involved have been required to spend time and Ocwen Financial Corporation has incurred expenses. No monetary corrective sanctions are ordered at this time. It appears that with the communication of the court's concerns and interaction at the hearings, Ocwen Financial Corporation, Ocwen Loan Servicing, LLC (to the extent it exists as a separate, functioning entity engaging in business activities), employees of Ocwen Financial Corporation, and outside counsel are working to remedy the issues.